UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| THE ESTATE OF AMOS MATTHEW FRERICHS, by Beverly Dunn as the Personal Representative of the Estate of Amos Matthew Frerichs, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.:  3:16-CV-693-TAV-CCS |
| KNOX COUNTY, TENNESSEE, et al., Defendants. | ) ) ) | |

## MEMORANDUM OPINION

This civil matter is before the Court on several motions: (1) plaintiff's[1] Motion for Scheduling Conference to Expedite Declaratory Judgment and Motion to Stay Other Proceedings Pending Issuance of Declaratory Judgment [Doc. 6], (2) plaintiff's Motion for This Court to Certify Under 28 U.S.C. § 2403 [Doc. 7], (3) defendant Evan Rogers's Motion to Dismiss for Lack of Subject Matter Jurisdiction, Standing, and Failure to State a Claim [Doc. 12], (4) defendant Knox County's Motion to Dismiss [Doc. 13], (5) the State of Tennessee's Motion to Dismiss [Doc. 17], and (6) defendant's Supplemental Motion to Dismiss [Doc. 23].  The parties have filed several responses and replies to the pending motions [Docs. 21–22, 24–26].

For the reasons that follow, the Court will: (1) deny as moot plaintiff's Motion for Scheduling Conference to Expedite Declaratory Judgment and Motion to Stay Other

---

[1]  The Court will refer to "plaintiff" as Beverly Dunn acting in her capacity as the personal representative of the Estate of Amos Matthew Frerichs.

Proceedings Pending Issuance of Declaratory Judgment [Doc. 6], (2) deny as moot plaintiff's Motion for This Court to Certify Under 28 U.S.C. § 2403 [Doc. 7], (3) grant defendant Evan Rogers's Motion to Dismiss for Lack of Subject Matter Jurisdiction, Standing, and Failure to State a Claim [Doc. 12], (4) grant defendant Knox County's Motion to Dismiss [Doc. 13], (5) grant the State of Tennessee's Motion to Dismiss [Doc. 17], and (6) deny as moot defendant's Supplemental Motion to Dismiss [Doc. 23].

## I.     Background[2]

This action arises from events occurring on December 18, 2015, ultimately resulting in the death of Amos Matthew Frerichs ("Frerichs"), whose estate brings this action. Frerichs was shot and killed in the parking lot of Academy Sports following an altercation with defendant Evan Rogers ("Rogers") and Rogers's partner, Geziel DosSantos ("DosSantos") [Doc. 1 ¶¶ 40–69].

Defendant Sheriff J.J. Jones ("Jones") created a Knox County Sheriff's Office Holiday Task Force to operate during the holiday season for the past several years [*Id.* ¶ 36. Plaintiff asserts that Jones negligently hires and trains officers, including deputy sheriffs and reserve officers, to investigate and arrest alleged shoplifters while dressed in plain clothes as a means of policing shoplifting during the holiday season [*Id.* ¶¶ 36–39].

According to plaintiff, Rogers and DosSantos served on the Holiday Task Force and were in plain clothes on December 18, 2015 [*Id.* ¶ 38. On that day, Rogers and DosSantos received a phone call from a loss prevention employee at Academy Sports who told them

---

[2] The Court details plaintiff's allegations as presented in her complaint [Doc. 1].

2

to arrest Frerichs [*Id. ¶* 40]. The officers waited outside of the store and confronted him [*Id. ¶* 41].

Frerichs began to run into the parking lot and the officers chased him [*Id. ¶* 44]. Rogers drew his gun as he ran and pointed it at Frerichs [*Id. ¶* 45]. Frerichs then got into his vehicle and began to operate it [*Id. ¶* 47]. The officers reached the car only a few seconds afterwards, and they began physically striking Frerichs [*Id. ¶¶* 48–49]. Rogers employed his taser on Frerichs, and then struck him in the face with the butt of the taser [*Id. ¶¶* 51–52]. Rogers then dropped his taser and instructed DosSantos to tase Frerichs, which DosSantos did [*Id. ¶¶* 53–55].

The complaint further alleges that as DosSantos's taser was cycling, delivering an electric current through Frerichs's body, Frerichs drove the car in reverse [*Id. ¶* 56]. The officers were pulled backwards by the driver-side door and fell to the left of the car [*Id. ¶* 57]. Frerichs stopped reversing and attempted to drive away [*Id. ¶* 59]. Rogers then stood back up, repositioned himself toward the front of the car, and fired six shots into the driver-side window, killing Frerichs [*Id. ¶¶* 60–62]. Plaintiff asserts that Rogers fired the six shots in the direction of Academy Sports, and there were approximately 100 people inside of the store [*Id. ¶* 64].

Plaintiff provides that Rogers himself admitted that he fired the shots because "his training kicked in" [*Id. ¶¶* 84–85]. Plaintiff contends that had Knox County and Jones properly trained Rogers in the use of force, Frerichs would still be alive [*Id. ¶* 71]. As provided in the complaint, DosSantos did not fire his weapon because of the risk of hitting

3

others [*Id.* ¶¶ 73–74].  Plaintiff asserts that Knox County and Jones took no reprimanding actions against Rogers [*Id.* ¶ 76].

On December 14, 2016, Beverly Dunn ("Dunn"), Frerichs's mother, was appointed the administrator *ad litem* of the Estate [Doc. 5].  Dunn and Frerichs's biological father, Elton Frerichs, Jr. ("Frerichs, Jr."), are the sole heirs to the Estate, the only asset of which is this wrongful death action [Doc. 5-1 p. 1].

As a result of the alleged actions giving rise to Frerich's death, Dunn brings suit in her capacity of administrator on behalf of Frerichs's estate ("the Estate") against Rogers, Knox County, and Jones [Doc. 1 ¶¶ 7–9].  In the complaint, she seeks relief in the form of a declaratory judgment and damages.

As to declaratory judgment, Count One of the complaint seeks a declaration that the fee-shifting provisions in Tenn. Code Ann. § 29-20-113 are unconstitutional [*Id.* ¶¶ 17–34].  Section 29-20-113 provides:

> if a claim is filed with a Tennessee or  federal court . . . against an employee of . . . a governmental entity of the state in the person's individual capacity, and the claim arises from actions or omissions of the employee acting in an official capacity or under color of law, and that employee prevails in the proceeding as provided in this section, then the court or other judicial body on motion shall award reasonable attorneys' fees and costs incurred by the employee in defending the claim filed against the employee.

Tenn. Code Ann. § 29-20-113(a).  Plaintiff alleges that this statute violates the Supremacy Clause and the Equal Protection Clause of the United States Constitution [Doc. 1 ¶¶ 14–15, 17–34].  Plaintiff further contends that she cannot make an informed decision as to whether she should bring this action against Rogers individually for federal and state law

4

claims until and unless the constitutionality of § 29-20-113 is settled [*Id.* ¶ 12].  All three defendants are parties to the declaratory judgment claim [*Id.* ¶ 16].

As to damages, plaintiff brings claims pursuant to 18 U.S.C §§ 1983 and 1988 for violations of Frerichs's Fourth and Fourteenth Amendment rights against Knox County, Rogers in his official capacity, and Jones in his official capacity.  Plaintiff also brings such claims against Rogers in his individual capacity, but states that the individual capacity claims are conditioned upon the Court determining that § 29-20-113 is unconstitutional [*Id.* ¶ 138].  Plaintiff further requests in the complaint that the Court "stay proceedings in this action until the Court issues declarations as to the constitutionality of Tenn. Code Ann. § 29-20-113" [*Id.* ¶ 139].  Plaintiff also brings various state law claims against defendants.

The State of Tennessee ("Tennessee") filed a motion to intervene to defend the constitutionality of § 29-20-113 [Doc. 14], which Magistrate Judge C. Clifford Shirley, Jr. granted [Doc. 16].  Now pending before the Court are several motions to dismiss [Docs. 12–13, 17, 23].  Defendants and Tennessee move to dismiss plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  The Court will first address the arguments pursuant to Rule 12(b)(1), and then the Court will turn to the Rule 12(b)(6) arguments.

## II.      Analysis Under Rule 12(b)(1)

In Count One of her complaint, plaintiff seeks a judgment from the Court declaring that the fee-shifting statute, Tenn. Code Ann. § 29-20-113, is unconstitutional.  Defendants and Tennessee assert that dismissal of this claim under Rule 12(b)(1) is appropriate, as the

Court lacks subject matter jurisdiction over the claim because plaintiff has no standing to bring the claim, the claim is moot, and the claim is not ripe for review. The Court will begin its analysis of this argument by addressing the appropriate standard of review.

## A.    Standard of Review

"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Therefore, subject matter jurisdiction is a threshold issue, which the Court must consider prior to reaching the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998); *see* Fed. R. Civ. P. 12(h)(3) (stating that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action"). Unlike a motion to dismiss on the merits under Rule 12(b)(6), "where subject matter jurisdiction is challenged under Rule 12(b)(1)[,] . . . the plaintiff has the burden of proving jurisdiction in order to survive the motion." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)).

"Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "A *facial* attack is a challenge to the sufficiency of the pleading itself." *Id.* In considering whether jurisdiction has been established on the face of the pleading, "the court must take the material allegations of the petition as true and construed in the

light most favorable to the nonmoving party." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235–37 (1974)).

"A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *Id.* In considering whether jurisdiction has been proved as a matter of fact, "a trial court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In evaluating a factual attack, "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Ritchie*, 15 F.3d at 598 (internal citation omitted).

Here, rather than attacking plaintiff's pleadings, defendants and Tennessee argue that this Court lacks subject matter jurisdiction over plaintiff's declaratory judgment claims because they are not ripe, are moot, and plaintiff lacks standing to bring them. To support these arguments, defendants Tennessee point to, among other things, defendants' representations that they do not intend to seek attorneys' fees against plaintiff, and that to do so would be fruitless because the Estate is insolvent. Thus, the Court finds that the jurisdictional challenge is a factual attack with respect to plaintiff's declaratory judgment claims. *See Ritchie*, 15 F.3d at 598. Consequently, the Court will evaluate all submitted documentation and will weigh the evidence to determine the factual existence of subject

matter jurisdiction over plaintiff's declaratory judgment claim, giving no presumptive truthfulness to plaintiff's allegations with respect to this claim. *See id*.

### B. Law Governing Standing, Ripeness, and Mootness

Article III standing is a threshold question in every federal case. *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir. 2009). It "enforces the Constitution's case-or-controversy requirement." *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004)). "The burden of establishing standing is on the party seeking federal court action." *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 927 (6th Cir. 2002).

To establish Article III standing, a plaintiff must demonstrate:

(1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Wuliger*, 567 F.3d at 793. Ultimately, the standing inquiry focuses not on the merits of the claim, but on the party bringing the claim. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 484 (1982).

A second doctrine under Article III is ripeness. *See Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 280 (6th Cir. 1997). This "doctrine is designed to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Insomnia Inc. v. City of Memphis*, 278 F. App'x 609, 612 (6th Cir. 2008) (citations and internal quotation marks omitted). In cases where a plaintiff alleges future injury, "the

8

injury in fact be certainly impending," because premature matters, where "the injury is speculative and may never occur," are inappropriate for court review. *Magaw*, 132 F.3d at 280; *cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 432 (2013) (indicating that a party can establish standing based on a future injury that based on a "reasonable probability" of injury "that suggest[s] less than absolute, or literal certainty").

Notably, "[t]here is unquestionably some overlap between ripeness and standing[,]" and "[w]hen the injury alleged is not actual but merely threatened, standing and ripeness become more difficult to distinguish." *Airline Prof'ls Ass'n of Int'l Bhd. of Teamsters, Local Union No. 1224, AFL-CIO v. Airborne, Inc.*, 332 F.3d 983, 988 (6th Cir. 2003). As related to "declaratory judgment based on pre-enforcement review of a statute," the Sixth Circuit has provided that it is "often difficult to draw a line between actual controversies and attempts to obtain advisory opinions on the basis of hypothetical controversies." *Kardules v. City of Columbus*, 95 F.3d 1335, 1343–44 (6th Cir. 1996) (citation omitted). The Supreme Court has held that the ripeness of a claim for declaratory judgment hinges on "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). A claim is not "fit" for judicial review if it "depends on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

9

A final Article III limitation is mootness. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016). A claim is moot when "an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation." *Id.* (citation and internal quotation marks omitted). "A case becomes moot only when it is impossible for a court to grant any effectual relief [whatsoever] to the prevailing party." *Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012) (citation and internal quotation marks omitted).

**B.     Analysis of Plaintiff's Declaratory Judgment Claim**

Here, plaintiff seeks a declaratory judgment on the constitutionality of Tenn. Code Ann. § 29-20-113 in order to insulate the Estate from liability for defendant Rogers's attorneys' fees, in the event that she does not prevail on her claims against Rogers in his personal capacity [Doc. 1 ¶ 140]. Defendants and Tennessee argue that plaintiff has no standing to bring this claim, the claim is moot, and the claim is not ripe for review.

The Court notes that plaintiff provides evidence that Frerichs died intestate and that the sole asset of the Estate is the wrongful death action [Doc. 5-1]. In consideration of this fact, Rogers and Knox County have represented that "[u]nder these circumstances," they "have no intention of seeking any award of attorneys' fees pursuant to Tenn. Code Ann. § 29-20-113" [Doc. 12 p. 3; *see also* Doc. 25 p. 2].

Where an attorney's statements are "deliberate, clear and unambiguous," the Court may take such representations as judicial admissions. *See MacDonald v. GMC*, 110 F.3d 337, 340 (6th Cir. 1997); *see also DeJager Const., Inc. v. Schleininger*, No. 1:94-CV-239,

10

1996 WL 173168, at *8 (W.D. Mich. Mar. 13, 1996) (noting that statements of counsel are "binding as stipulations or concessions if made in open court or in writing"). In light of this representation, defendants and Tennessee argue that any injury plaintiff may suffer is too attenuated to satisfy the ripeness requirement and/or plaintiff's alleged injury is moot.

In response, plaintiff asserts that Tenn. Code Ann. § 29-20-113, by its language, does not allow Knox County or Rogers to waive the award of attorneys' fees [Doc. 24 p. 6]. However, as Tennessee points out, the statute states that the court shall award attorneys' fees only "on motion." Tenn. Code Ann. § 29-20-113(a). Consequently, defendants have the ability to waive such fees.

Plaintiff also points out that defendants have merely stated they will not seek attorneys' fees "under these circumstances," and plaintiff argues that the threat of fees looms over her head as the "proverbial sword of Damocles," which under even a slight change of circumstances could come down "at [d]efendants' discretion" [Doc. 24 p. 7]. The phrase "under these circumstances" does leave room for the type of ambiguity that could prevent the Court from considering the representation as a binding judicial admission. In their reply, however, defendants stated unequivocally that they will not seek attorneys' fees from the Estate [Doc. 25 p. 2]. As such, the Court finds that counsel for defendants made a "deliberate, clear and unambiguous" representation that they will not seek attorneys' fees from the Estate, and the Court takes this representation as a judicial admission. *See MacDonald*, 110 F.3d at 340.

11

This representations moots any concern that plaintiff has regarding the potential of being subject to attorney's fees should Rogers prevail on plaintiff's individual capacity claims against him. As such, the Court finds that defendants' representations constitute "an intervening circumstance" that has deprived plaintiff "of a personal stake in the outcome" of the declaratory judgment claim. *See Campbell-Ewald Co.*, 136 S. Ct. at 669. Consequently, the claim is moot on these grounds. *See id.*; *see also Knox*, 567 U.S. at 307.

Furthermore, as to the ripeness of plaintiff's alleged injury, any future injury plaintiff would suffer based on the alleged unconstitutionally of § 29-20-113 would require that: (1) plaintiff actually brings claims against Rogers in his individual capacity, rather than conditionally bringing them; (2) Rogers prevails on those claims; (3) Rogers brings a motion for attorneys' fees and costs; and (4) Rogers is a "prevailing party" within the meaning of § 29-20-113.[3] Thus, the actual payment of attorneys' fees is merely a conjectural injury. *See Wuliger*, 567 F.3d at 793. Unlike the imminent or likely injury

---

[3] Section 29-20-113 provides:

(b) For purposes of this section, the employee shall be the prevailing party if:

(1) The employee successfully defends the claim alleging individual liability; or

(2) The claim of individual liability is dismissed with or without prejudice after forty-five (45) days have elapsed after an answer or other responsive pleading is filed in which the employee asserts the employee was not acting within the employee's individual capacity at the time of the matters stated in the complaint.

Tenn. Code Ann. § 29-20-11(b).

12

required for Article III standing and ripeness, plaintiff's injury is contingent on multiple events, the occurrences of which are merely speculative, and, therefore, plaintiff's declaratory judgment claim is not fit for review. *See Abbott Labs.*, 387 U.S. at 149; *Wuliger*, 567 F.3d at 793.

In response to defendants and Tennessee's motions to dismiss, plaintiff provides additional arguments as to her alleged injury that she submits satisfy the case-or-controversy requirement. First, plaintiff provides that she "immediately suffered an injury in the contemplation of bringing a lawsuit to vindicate civil rights" with potential exposure to fees under § 29-20-113 [Doc. 22 p. 8]. In doing so, she argues that initiating the lawsuit subjects her to fees [*Id.*]. She further asserts that the threat of attorneys' fees is an injury sufficient to satisfy the requirements of Article III standing [Doc. 24 p. 6]. The Court finds that these alleged injuries are also moot, however, based on defendants' representations that they will not seek fees from the Estate. Whether the Court determines that § 29-20-113 is constitutional has no bearing on whether defendants will seek fees against the insolvent Estate.

The Court notes that, in opposition to the motions to dismiss for lack of jurisdiction, plaintiff attached an email exchange between plaintiff's counsel and defendants' counsel [Doc. 24-1]. In this email exchange, defendants' counsel provided that if Dunn sues in her capacity as next of kin, she would be "personally liable for an award of fees under the statutes as any other plaintiff" [*Id.* at 2]. Further, plaintiff has stated that Dunn and Frerichs, Jr. wish to bring this claim in their personal capacities but cannot for fear of § 29-20-113.

13

To the extent that plaintiff is alleging that the threat of fees is an injury to Dunn and Frerichs, Jr. in their individual capacities, the Court notes that Dunn and Frerichs, Jr. are not parties to this suit in their individual capacities, and any alleged injury they have cannot satisfy the requirements of Article III. I Dunn has reiterated throughout the briefings that she is bringing this suit on behalf of the Estate in her capacity as a personal representative and not in her individual capacity as a beneficiary [*See* Doc. 26 pp. 5–6, 8]

Plaintiff also alleges that her inability to make an informed decision as to whether to sue Rogers in his individual capacity conditionally or outright constitutes an injury from § 29-20-113 [Doc. 1 ¶ 12; Doc. 24 p. 4]. Plaintiff, however, cites no authority for the proposition that her inability to make an informed decision constitutes a justiciable injury. Plaintiffs must routinely navigate statutory frameworks when contemplating bringing a claim against any defendant, and thus, plaintiff's alleged injury is no more than a "generalized grievance" on these grounds. *Wuliger*, 567 F.3d at 793. As the Supreme Court has articulated, "even when the plaintiff has alleged redressable injury sufficient to meet the requirements of Art. III," the judiciary "has refrained from adjudicating abstract questions of wide public significance which amount to generalized grievances, pervasively shared and most appropriately addressed in the representative branches." *Valley Forge*, 454 U.S. at 474–75 (citations and internal quotation marks omitted).

For the reasons thus stated, the Court finds that plaintiff lacks Article III standing to bring her declaratory judgment claim, and that plaintiff's claim is moot and not ripe. Therefore, plaintiff has failed to meet her burden of establishing this Court's subject matter

jurisdiction over the declaratory judgment claim.  Consequently, the Court will dismiss the claim under Rule 12(b)(1).

## III.   Analysis Under Rule 12(b)(6)

Defendants move to dismiss the following claims for failure to state a claim under Rule 12(b)(6): (1) conditional 18 U.S.C. § 1983 claim against Rogers in his individual capacity; (2)  § 1983 claim against Knox County; (3) § 1983 claims against Rogers and Jones in their official capacities; and (4) several state law claims against defendants.[4]  The Court will first address the applicable standard of review for motions pursuant to Rule 12(b)(6), and then the Court will examine each of plaintiff's remaining claims.

### A.     Standard of Review

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard.  *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004).  It requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief" requires more than labels and

---

[4] The parties provide several arguments in favor of their motions to dismiss.  In defendant's Supplemental Motion to Dismiss, defendants move to dismiss all of plaintiff's claims pursuant to Rule 12(b)(6), arguing that the Estate is not the proper party to bring suit, and that it lacks the capacity to do so under state and federal law [Doc. 23].  However, because the Court ultimately finds that plaintiff's claims should be dismissed on other grounds, it will not reach the question of the capacity of the Estate.  Consequently, the Court will deny the supplemental motion [*Id.*] as moot.

15

conclusions." *Id.* "[A] formulaic recitation of the elements of a cause of action will not do," nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## B. Section 1983 Conditional Claims Against Rogers in his Individual Capacity

In the complaint, plaintiff includes claims against Rogers in his individual capacity that she conditions on the Court declaring Tenn. Code Ann. § 29-20-113 unconstitutional [Doc. 1 ¶¶ 138–42]. As the Court previously determined, plaintiff has failed to meet her burden in proving subject matter jurisdiction as to her declaratory judgment claim.

According to plaintiff's own complaint, she has not yet brought claims against Rogers in his individual capacity, and it does not appear that plaintiff wishes to bring these claims unless the Court decides the declaratory judgment claim her favor [*See* Doc. 1 ¶¶

16

138–42].[5]   Rather, plaintiff argues that § 29-20-113 is facially unconstitutional and, therefore, the condition necessary for plaintiff's individual capacity claims against Rogers was met at the time plaintiff filed the complaint [Doc. 22 p. 1].  The Court notes that in the complaint, plaintiff specifically conditions the claims against Rogers in his individual capacity on "this Court *holding* Tenn. Code Ann. § 29-20-113 is unconstitutional" [Doc. 1 ¶ 138 (emphasis added)].  Because the Court is not deciding the declaratory judgment claim on the merits, and is not, therefore, issuing a holding with regard to the constitutionality of § 29-20-113, the Court will dismiss plaintiff's conditional claims.  Reading plaintiff's complaint as true, she did not intend to bring these claims absent a determination as to the constitutionality of § 29-20-113.  Furthermore, plaintiff did not move to amend her complaint to remove the conditional status of the claims.  Accordingly, the Court will dismiss plaintiff's conditional § 1983 claims against Rogers.

### C.   Section 1983 Claims Against Knox County

Plaintiff brings claims against Knox County for violations of Frerichs's constitutional rights under 42 U.S.C. § 1983 [Doc. 1 ¶¶ 105–16].  Knox County moves to dismiss plaintiff's § 1983 claims against it for failure to state claims under Rule 12(b)(6).

A municipality may not be held liable under 42 U.S.C. § 1983 "for an injury inflicted solely by its employees or agents."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  "Instead, it is when execution of a government's policy or custom, whether made

---

[5] This is further indicated by plaintiff's expressed intent to avoid any potential liability for Rogers's attorneys' fees [*See* Doc. 24-1].

17

by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* Accordingly, to succeed on a municipal liability claim under § 1983, a plaintiff "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. at 694).

"A plaintiff asserting a section 1983 claim on the basis of a municipal custom or policy must identify the policy, connect the policy to the [county] itself, and show that the particular injury was incurred because of the execution of that policy." *Graham v. Cty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (internal citation and quotation marks omitted). "There must be 'a direct causal link' between the policy and the alleged constitutional violation such that the County's 'deliberate conduct' can be deemed the 'moving force' behind the violation." *Id.*

The policy or custom of the municipality must evince a "deliberate indifference" to the rights of persons with whom police officers come into contact. *See Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410–11 (1997) (applying the deliberate indifference standard to employment decision claims); *City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (applying the deliberate indifference standard to failure to train claims). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410. "[A] plaintiff ordinarily cannot show that a municipality acted with deliberate indifference

18

without showing that the municipality was aware of prior unconstitutional actions of its employees and failed to respond." *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997).

Plaintiff's § 1983 claims against Knox County are premised on: (1) inadequate training, (2) the initiation and retention of the Holiday Task Force; and (3) the ratification of Rogers's actions. The Court will address whether plaintiff has stated a valid § 1983 claim against Knox County under each of these theories in turn. First, however, the Court finds that any allegations against Jones in the complaint "may fairly be said to represent [Knox County's] official policy," as Jones is the Sherriff. *See Monell*, 436 U.S. at 694.

### 1.    Inadequate Training

Plaintiff's first theory of municipal liability rests on a failure to train [Doc. 1 ¶¶ 105–16]. In order to state a claim for failure to train, plaintiff must show that: (1) "[Knox County's] training program was inadequate for the task that officers must perform"; (2) "the inadequacy was the result of [Knox County's] deliberate indifference"; and (3) "the inadequacy was closely related to or actually caused the injury." *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006) (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)).

In order to meet the standard of showing deliberate indifference in the context of inadequate training, a plaintiff may proceed in two ways. First, a plaintiff may show "prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and

19

likely to cause injury." *Plinton v. Cty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008). Alternatively, a plaintiff may show "evidence of a single violation of federal rights accompanied by a showing that the County had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Id*. (citing *Brown*, 520 U.S. at 409).

However, the fact "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [county], for the officer's shortcomings may have resulted from factors other than a faulty training program." *See Canton*, 489 U.S. at 390–91. "[M]ere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to make out deliberate indifference." *Harvey v. Campbell Cty.*, 453 F. App'x 557, 563 (6th Cir. 2011) (citation omitted).

Plaintiff alleges that Jones "negligently hires and trains officers including deputy sheriff and reserve officers to investigate and arrest alleged shoplifters while dressed in plain clothes" [Doc. 1 ¶ 37]. The Court notes that "deliberate indifference describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). As such, plaintiff's allegation that Jones was negligent does not rise to the level of showing deliberate indifference on the part of Knox County. *See id.* In addition, the complaint alleges no prior instances of unconstitutional conduct, and it asserts no facts that would indicate that Knox County "was clearly on notice that the training in this particular area was deficient and likely to cause injury." *See Fisher*, 398 F.3d at 849.

20

Further, plaintiff's other allegations do not tend to show actions rising to the level of deliberate indifference. Plaintiff points to Rogers's statement that his "training kicked in" as evidence that Knox County's training program is inadequate [Doc. 1 ¶ 21]. Viewed in the light most favorable to plaintiff, however, this statement shows only that "a particular officer may be unsatisfactorily trained." *Canton*, 489 U.S. at 390–91. Even if Rogers is of the opinion that he acted in accordance with his training, that allegation alone does not result in a finding that Knox County was deliberately indifferent when plaintiff has not alleged that Knox County was clearly on notice that the training in this particular area was deficient or that the circumstances of this particular incident were recurring.

Consequently, the Court finds that plaintiff has not pled sufficient facts to show that Knox County was deliberately indifferent in the context of failure to train. As such, plaintiff's complaint does not contain sufficient allegations to state a § 1983 claim based on a failure to train theory.

### 2. Initiation and Retention of Holiday Task Force

Plaintiff's second theory of municipal liability is based on the initiation and retention of the Holiday Task Force. A plaintiff may show that a municipal policy or custom is unconstitutional by showing it to be "facially unconstitutional as written or articulated." *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (citing *Monell*, 436 U.S. at 692–94). Additionally, a plaintiff may show a municipal policy or custom violates § 1983 by showing that the policy is "facially constitutional but

21

consistently implemented to result in constitutional violations with explicit or implicit ratification by [county] policymakers." *Id.* (citing *Monell*, 436 U.S. at 692–94).

In the complaint, plaintiff provides that the purpose of the Holiday Task Force is to "appear tough on crime during the holiday season" [Doc. 1 ¶ 37]. According to plaintiff, Rogers "married this concept into the use of his excessive and lethal force" [*Id.* ¶ 82]. However, plaintiff has not alleged that the use of excessive force was part of Knox County's official policy for the execution of the Holiday Task Force, and plaintiff has not pled facts to indicate that the Holiday Task Force was "consistently implemented to result in constitutional violations with . . . ratification by [county] policymakers." *Gregory*, 444 F.3d at 752. Plaintiff has, therefore, failed to plead "factual content that allows the court to draw the reasonable inference" that the Holiday Task Force is unconstitutional as articulated. *See Iqbal*, 556 U.S. at 678; *see Gregory*, 444 F.3d at 752. Instead, plaintiff's claims concerning the Holiday Task force are conclusory and insufficient to state a § 1983 claim against Knox County. *See Twombly*, 550 U.S. at 555.

### 3. Ratification of Rogers's Actions

Plaintiff's final theory for § 1983 municipal liability is that Knox County and Jones ratified Rogers's conduct by failing to take appropriate actions against Rogers after the incident. Under a ratification theory of municipal liability, a single decision can constitute a municipal policy or custom "if that decision is made by an official who 'possesses final authority to establish municipal policy with respect to the action ordered,' which means that his decisions are 'final and unreviewable and are not constrained by the official

22

policies of superior officials.'" *Flagg v. City of Detroit*, 715 F.3d 165, 175 (6th Cir. 2013) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81, (1986)); *Miller v. Calhoun Cnty.*, 408 F.3d 803, 814 (6th Cir. 2005)).  However, "ratification of a subordinate's action requires more than acquiescence—it requires affirmative approval of a particular decision made by a subordinate." *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993) (internal citation omitted).

Further, under the ratification theory, a plaintiff is still required to show that ratification of a municipal policy, custom, or action was the proximate cause of plaintiff's injury.  *See Teare v. Indep. Local Sch. Dist. Bd. of Educ.*, No. 1:10-cv-01711, 2011 WL 4633105, at *8 (N.D. Ohio Aug. 18, 2011).  "Although ratification might tend to establish the existence of a policy of acquiescence that in itself was a 'moving force,' mere ratification of the conduct at issue by itself cannot legally suffice as a 'moving force.'" *Alexander v. Beale St. Blues Co.*, 108 F. Supp. 2d 934, 949 (W.D. Tenn. 1999).

When there is a documented pattern of abuse, however, a municipality can be found to be deliberately indifferent in failing to investigate incidents of alleged police abuse and failing to discipline the officers involved.  *See Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989); *Marchese v. Lucas*, 758 F.2d 181, 188 (6th Cir. 1985).  A "single, isolated incident" of a failure to conduct a meaningful investigation or to discipline the officers involved cannot give rise to municipal liability.  *See Maynard v. Jackson Cty.*, 706 F. Supp. 2d 817, 827–28 (S.D. Ohio 2010).

23

Here, the complaint states that Knox County and Jones ratified Rogers's conduct "by failing to take appropriate actions against [him]" after the alleged misconduct [Doc. 1 ¶ 111]. Plaintiff, however, does not allege any facts, such as prior instances of constitutional violations, that would indicate that Jones "affirmative[ly] approv[ed]" Rogers's alleged misconduct. *See Feliciano*, 988 F.2d at 656. Further, Jones's failure to reprimand Rogers was not the proximate cause, or "moving" force, of Frerichs's injury. *See Alexander*, 108 F. Supp. at 949. Plaintiff also has not alleged the existence of a documented pattern of abuse prior to the incident giving rise to its lawsuit. Rather, the complaint describes a "single, isolated incident" of a failure to take action. *See Maynard*, 706 F. Supp. 2d at 827–28. Thus, this alleged failure to take action cannot serve as the basis for § 1983 liability based on a ratification theory.

Plaintiff also alleges that Jones instituted the Holiday Task Force "to appear tough on crime with zero tolerance and ROGERS married this concept into the use of his excessive and lethal force as evidenced by the facts of this occurrence and the video depicting his unlawful acts" [Doc. 1 ¶ 82]. Even viewing this allegation in the light most favorable to plaintiff, it does not show that any unlawful implementation of an otherwise facially lawful municipal policy was ratified by a policymaking official. *See Flagg*, 715 F.3d at 175. Furthermore, there are no allegations in the complaint to suggest that Rogers's alleged use of excessive force, which plaintiff claims he "married" to the Holiday Task Force's "tough on crime" policy, was brought before a policymaking official and expressly approved [*See* Doc. 1 ¶ 82]. Consequently, plaintiff's complaint does not contain sufficient

24

allegations to state a § 1983 claim based on a ratification theory.  *See Feliciano*, 988 F.2d at 656.

In sum, the Court finds that plaintiff fails to state a municipal liability § 1983 claim against Knox County under all three theories.  Plaintiff's § 1983 claims against Knox County will, therefore, be dismissed.

### D.    Section 1983 Claims Against Jones and Rogers in Their Official Capacities

Plaintiff also brings § 1983 claims against Jones and Rogers in their official capacity.  "An official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents."  *Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).

As plaintiff brings claims against Knox County, the public entity Jones and Rogers represent, plaintiff's § 1983 claims against Rogers and Jones in their official capacities will dismissed insofar as they are redundant [Doc. 1 ¶¶ 105–16].  Because plaintiff's allegations against Jones and Rogers in their official capacities are coextensive with her allegations against Knox County, the Court will also dismiss these claims.

### E.    State Law Claims

Plaintiff further brings claims pursuant to state law [Doc. 1 ¶¶ 117–38].  Courts may exercise "supplemental jurisdiction over state claims that are so related as to 'form part of the same case or controversy form.'"  *Seaton v. Seaton*, 971 F. Supp. 1188, 1196 (E.D. Tenn. 1997); *see also* 28 U.S.C. § 1367.  However, "[t]his jurisdiction . . . is discretionary

25

under certain circumstances and is not plaintiff's right." *Seaton*, 971 F. Supp. at 1196. Specifically, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all of the claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

As discussed herein, all of plaintiff's federal claims will be dismissed, and only plaintiff's state law claims remain. Therefore, this Court's exercise of supplemental jurisdiction over these claims is discretionary. *See id.* As such, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims, and these claims will also be dismissed.

## IV. Conclusion

For the reasons stated herein, the Court will **GRANT** defendant Rogers's Motion to Dismiss for Lack of Subject Matter Jurisdiction, Standing, and Failure to State a Claim [Doc. 12], defendant Knox County's Motion to Dismiss [Doc. 13], and the State of Tennessee's Motion to Dismiss [Doc. 17]. The Court will **DENY as moot** defendant's Supplemental Motion to Dismiss [Doc. 23]. As the Court is dismissing all of plaintiff's claims, the Court will also **DENY as moot** plaintiff's Motion to Stay Other Proceedings Pending Issuance of Declaratory Judgment [Doc. 6] and plaintiff's Motion for this Court to Certify Under 28 U.S.C. § 2403 [Doc. 7]. The Clerk of Court will be **DIRECTED** to **CLOSE** this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

26